S. K. SARGENT ET AL. *v.* CHARLES E. CLARK ET AL.

May Term, 1910.

Present:   ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed August 20, 1910.

*Towns—Expenditures—Purposes—Opposing Act Setting off Part of Territory—Nature and Status of Towns—Legislative Control—Municipal Charters—Strict Construction—Ultra Vires.*

The "rights and interests" meant by P. S. 3530, providing that "a town may vote such sums of money as it deems necessary * * * for the prosecution and defence of the common rights and interests of the inhabitants, and for other incidental town purposes," are the rights and interests of the inhabitants in their corporate capacity; and so that statute does not authorize a town to vote money to pay expenses incurred by some of its inhabitants in opposing an act of the Legislature constituting a part of the town's territory into a new town and apportioning the former's assets and liabilities between the two.

Towns are creations of the Legislature, are constituted for governmental purposes, and so the rights and franchises of a town never can become vested rights as against the State, which may enlarge, restrict, and even destroy its corporate existence, as the public good requires; and such action neither defeats vested rights, nor impairs contract obligations within the meaning of Constitution.

The State has to some extent the control of the property of towns held for municipal purposes, but not of property held for private purposes, as in trust for purposes other than municipal and corporate.

The charters of municipalities are to be strictly construed against them, the presumption being that the State granted in clear and unmistakable terms all that it intended to grant.

As legislative powers cannot be delegated, an attempt by a town to exercise powers not within the province of local self-government, whether the right to do so is claimed by express legislative grant or by implication from the charter, is *ultra vires*, and therefore void.

A town has no right as against the State to have its territorial limits remain unchanged.

APPEAL IN CHANCERY. This is a bill in equity brought by citizens and taxpayers of the town of Pawlet against the selectmen and treasurer thereof, seeking to restrain the payment of expenses incurred by some of its inhabitants in opposing an act of the Legislature constituting a part of the town's territory into a new town. Heard on the pleadings and master's report at the September Term, 1909, Rutland County, *Stanton*, Chancellor. Decree dismissing the bill with costs to defendants. The orators appealed.

*Stickney, Sargent & Skeels* for the orators.

It has been uniformly held in the New England States except in Connecticut, that a town cannot incur expense in opposing, before a legislative committee a division of its territory. *Minott* v. *West Roxbury*, 112 Mass. 1; *Coolidge* v. *Brookline*, 144 Mass. 592; *Frost* v. *Belmont*, 88 Mass. 152; *State* v. *Arnold*, 38 Ind. 41.

P. S. 3530 authorizes towns to pay only such expenses as are incurred within the province of local self-government, which the expense in question was not. "Such incidental powers must spring from some power granted in terms and relate to a subject-matter set forth with distinctness in some portion of the statutes, and be one which is in some way necessary for the town to exercise in carrying out and performing its corporate duties as an existing body politic. *Minot* v. *West Roxbury*, 112 Mass. 1; *Coolidge* v. *Brookline*, 114 Mass. 592; *Westbrook* v. *Deering*, 63 Me. 231; *Merrill* v. *Plainfield*, 45 N. H. 126; *Gates* v. *Hancock*, 45 N. H. 528; *Henderson* v. *City of Covington*, 14 Bush. 312.

*Lawrence, Lawrence & Stafford* and *T. W. Moloney* for the defendants.

P. S. 3530 fully authorizes the town to pay the expenses in question. *Farrell* v. *Derby*, 58 Conn. 234, 20 Atl. 460; *Connolly* v. *Beverly*, 151 Mass. 437; *Bachelder* v. *Epping*, 28 N. H. 354; *Spaulding* v. *Lowell*, 23 Pick. 71.

ROWELL, C. J.    The question is whether a town can legally vote money to pay expenses incurred by some of its inhabitants in opposing before the Legislature the passage of a bill favored by other of its inhabitants to constitute a new town of part of its territory and to apportion its assets and liabilities between them.

This depends upon whether the statute authorizes it.    If it does, it must be in P. S. 3530, which provides that "a town shall vote such sums of money as it deems necessary for the support of schools in the town school district, for laying out and repairing highways, for the prosecution and defence of the common rights and interests of the inhabitants, and for other incidental town expenses."    But before considering whether this authorizes it or not, it is well to see in a general way what towns are, and what their purpose and functions.    They are creatures of the Legislature, and are constituted for governmental purposes, and their rights and franchises never can become vested rights as against the State, which may exercise over them exclusive control, and may enlarge, restrict, and even destroy their corporate existence, as the public good requires.    And such action on the part of the State neither defeats vested rights nor impairs contract obligations within the meaning of the constitution.    The State also has the control and disposition, to some extent certainly, of the property of towns held for municipal and corporate purposes, but not of property held for private purposes; as, in trust for purposes other than municipal and corporate.    *Montpelier* v. *East Montpelier*, 29 Vt. 12, 67 Am. Dec. 748.

The general disposition of courts in this county has been, Judge *Cooley* says—and the cases bear him out—to confine municipalities within the limits that a strict construction of the grants of power in their charters will assign to them, thus applying substantially the same rule that is applied to the charters of private corporations, the reasonable presumption being that the

State has granted in clear and unmistakable terms all it intended to grant at all.   Cooley Const. Lim., 6th ed., 231.

He further says that the powers conferred upon towns must be construed with reference to the object of their creation, namely, as agencies of the State in local government, for the State can create them for no other purpose, as it can confer powers of government to no other end without at once coming in conflict with the constitutional maxim that legislative powers can not be delegated, or with the constitutional provision designed to confine all the agencies of government to the exercise of their proper functions; and that whenever a town attempts to exercise powers not within the proper province of local self-government, whether the right tô do so is claimed under express legislative grant or by implication from the charter, the act must be considered as altogether *ultra vires* and therefore void.   Cooley, Const. Lim., 6th ed., 260.

These things being so, it is manifest that the rights and interests meant by our statute are the rights and interests of the inhabitants in their corporate capacity, and that the expenses meant are such as pertain to corporate rights, interest, and duties. And such is the construction put upon the statute in *Van Sicklen* v. *Burlington,* 27 Vt. 70; *Sheldon* v. *Bennington,* 67 Vt. 580, 32 Atl. 497, where it is said that "the want of interest involves the want of power"; and in *Spafford* v. *Norwich,* 71 Vt. 78, 42 Atl. 970.

But the matter of a legislative division of a town is a thing in respect of which the town as such has no corporate duty to perform, no corporate rights to defend, and no corporate interests to protect, for a town has no right as against the State to have its corporate limits remain unchanged, nor even its corporate existence prolonged, but is wholly in the hands of the Legislature in these respects, to be dealt with as it pleases.

It follows, therefore, that the question here presented must be decided in the negative.   And the Supreme Judicial Court of Massachusetts has held the same way under a statute much like ours.   Thus, in *Minot* v. *West Roxbury,* 112 Mass. 1, 17 Am. Rep. 52, it was contended that the annexation of the defendant to Boston was a matter so nearly affecting the rights of the town, and related to and involved questions of such municipal consequence, that the town had a right to petition the Legislature for annexa-

tion, and that the expense of the application fell properly within the statute authorizing towns to raise money "for all necessary charges arising therein." But the court held otherwise, on the ground that such action was not in the line of its corporate duty as a town, and was not for a purpose, and did not relate to a matter, for which towns by statute, either in terms or by implication, were empowered to raise money and tax their inhabitants.

So in *Coolidge* v. *Inhabitants of Brookline*, 114 Mass. 592, it was held under the same statute, that a town could not raise by taxation nor pay from its treasury, money for expenses incurred in opposing before the Legislature the annexation of the whole or a part of its territory to another town. There it was contended that the right to defend its existence, and its corporate limits when assailed, was incident and necessary to the exercise of its corporate duties and the accomplishment of the purposes for which it was created; that questions in which the town was deeply interested were involved, such as what its boundaries should be, what of its property should be taken, whether the portion left would be sufficient for its purposes, and the like; and that, as the town had a right by clear statutory implication to be heard on these questions, it was its duty to defend. But the court said that as against the State the right to defend was in no sense vested, and consequently imposed no duty to resist a change, and that it was clearly of opinion that a town had no corporate duty to defend its boundaries nor its existence before the Legislature, and therefore had no right to tax its inhabitants therefor. This goes upon the ground that want of duty involves the want of power, as *Sheldon* v. *Bennington* does that the want of interest involves the want of power.

Maine holds with Massachusetts under a similar statute. *Westbrook* v. *Deering*, 63 Me. 231. But Connecticut holds the other way by a divided court, under a statute giving the selectmen of a town authority to superintend its concerns. *Farrell* v. *Derby*, 58 Conn. 234, 20 Atl. 460, 7 L. R. A. 776. The case is put upon much the same ground as that contended for but rejected in *Coolidge* v. *Inhabitants of Brookline*.

But under a statute passed some years after the *Coolidge* case, authorizing the employment of counsel by "any town interested in a petition to the legislature," to represent it at a hearing thereon, Massachusetts held that a town could employ and pay

counsel to oppose its division before a legislative committee. *Connolly* v. *Inhabitants of Beverly,* 151 Mass. 437, 24 N. E. 404. But the evident purpose of that statute was, to change the law so as to recognize a corporate interest where none was recognized before.

*Decree reversed and cause remanded with mandate.*